# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE PERKINS, and all other voters it will effect, | ) ) ) | Case No. 1:07-cv-841 |
| Plaintiff, | ) ) | Honorable Wayne R. Andersen |
| v. | ) ) | Magistrate Judge Valdez |
| LANGDON NEAL, in his individual & official capacity as the City of Chicago Chairman of the Board of Election Commissioners, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## LANGDON NEAL'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Jeffrey D. Colman
Melissa S. Wills
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Attorneys For Defendant Langdon Neal

Dated: April 6, 2007

# **TABLE OF CONTENTS**

Introduction ..................................................................................................................................1

I.      Allegations Of The Complaint. .............................................................................................2

II.     Plaintiff's Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1) Because Plaintiff Lacks Constitutional Standing Under The Case And Controversy Provision Of Article III. .......................................................................4

A.     Plaintiff Lacks Article III Standing Because Plaintiff Has Failed To Allege Any Discernable Injury To Himself. ...................................................................................6

B.     Plaintiff Lacks Article III Standing Because Any Alleged Injury Cannot Be Fairly Traced To The Challenged Conduct Of Mr. Neal. .............................................................8

C.     Plaintiff Lacks Article III Standing Because Plaintiff Cannot Establish That The Alleged Injuries Will Be Redressed By The Requested Relief. .........................................................10

III.    Plaintiff's Complaint Must Be Dismissed For Failure To State A Claim Pursuant To Rule 12(b)(6) Because Plaintiff Cannot Demonstrate (A) That An Impermissible Conflict Of Interest Exists, (B) That He Suffered A Deprivation Of His Constitutional Rights, And (C) That Mr. Neal Acted With Discriminatory Intent. ...........................................................11

A.     Each Count Is Defective As A Matter Of Law Because Mr. Neal's Service As Chairman Of The CCBEC And His Ownership Of A Law Firm That Performs Legal Work For The City Of Chicago Does Not Create Any Legal Problems. ........................................................12

B.     Count I, Count II And Count III Are Defective As A Matter Of Law Because Plaintiff Has Not Suffered An Actual Deprivation Of His Right To Vote. ...........................................14

C.     Each Count Is Defective As A Matter Of Law Because Plaintiff Cannot Demonstrate That Mr. Neal Acted With Discriminatory Intent Or Misused His Position. .........................15

Conclusion ...................................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

Alger v. City of Chicago, 753 F. Supp. 228, 231 (N.D. Ill. 1990) ......................................... 5, 7, 8

Amundsen v. Chicago Park Dist., 218 F.3d 712, 716 (7th Cir. 2000).................................... 12, 13

Bajorat v. Columbia-Breckenridge Dev., Corp., 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996)... 16

Chavez v. Ill. State Police, 251 F.3d 612, 635-36 (7th Cir. 2001) ................................................ 11

Chisom v. Roemer, 501 U.S. 380, 397-98, 111 S. Ct. 2354, 2365 (1991) ..................................... 14

Foley v. Plumbers & Steamfitters Local #149, 109 F. Supp. 963, 970 (N.D. Ill. 2000) .............. 16

Harris v. Conradi, 675 F.2d 1212, 1216 (11th Cir. 1982)............................................................ 17

Hennings v. Grafton, 523 F.2d 861, 864 (7th Cir. 1975)........................................................ 17, 18

Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n, 426 U.S. 482, 496-97, 96 S. Ct. 2308, 2316 (1976)........................................................................................................................... 13

Jones v. Bd. of Educ. of Twp. High Sch. Dist., 651 F. Supp. 760, 767-68 (N.D. Ill. 1986) ........ 13

Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir. 1993)....................................................... 6, 8

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).......... 5, 6, 9

Miller v. Kusper, 445 F.2d 1059, 1061 (7th Cir. 1971)............................................... 14, 15, 17, 18

O'Sullivan v. City of Chicago, 396 F.3d 843, 852 (7th Cir. 2005) ....................................... passim

Ortiz v. City of Phila. Office of City Com'rs Voter Registration Div., 28 F.3d 306, 310-312 (3d Cir. 1994) .......................................................................................................................... 16

Osterberg v. Bd. of Trs. of the State Employees' Retirement Sys., 722 F. Supp. 415, 418 (N.D. Ill. 1989)............................................................................................................................. 13

Plotkin v. Ryan, 239 F.3d 882, 884 (7th Cir. 2001) .............................................................. passim

Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989)........................................................... 11, 15

Shakman v. Dunne, 829 F.2d 1387, 1397 (7th Cir. 1987)............................................................. 8

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 44, 96 S. Ct. 1917, 1927 (1976) .................. 5

Snowden v. Hughes, 321 U.S. 1, 7-11, 64 S. Ct. 397, 400-403 (1943)............................. 16, 17, 18

Thompson v. Ill. Dept. of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).......................... 2

U.S. v. Bloom, 149 F.3d 649, 654-58 (7th Cir. 1998) ................................................. 15, 16, 18, 19

Van Harken v. Chicago, 103 F.3d 1346, 1353 (7th Cir. 1997)........................................ 12, 13, 14

Welch v. McKenzie, 765 F.2d 1311, 1315-16 (5th Cir. 1985)............................................... 16, 18

Whitmore v. Ark., 495 U.S. 149, 155-56, 110 S. Ct. 1717, 1723 (1990)................................... 5, 6

**Statutes**

18 U.S.C § 1346.................................................................................................. 4, 12

18 U.S.C. § 1341.................................................................................................. 12

42 U.S.C § 1973.......................................................................................... 4, 12, 14, 15

**Introduction**

This Court should dismiss the claims asserted by plaintiff Maurice Perkins against defendant Langdon Neal, the Chairman of the City of Chicago Board of Election Commissioners ("CCBEC"), because (1) the Court lacks subject matter jurisdiction under the case and controversy provision of Article III, and (2) Plaintiff's allegations show that he is not entitled to relief as a matter of law. The gist of Plaintiff's claims is that Mr. Neal allegedly has deprived and threatens to deprive Plaintiff of his constitutionally protected right to vote under the First and Fourteenth Amendments and the Voting Rights Act. Essentially, Plaintiff claims that his rights and all voters' rights are burdened by Mr. Neal's service as an election commissioner and his position as the owner of a law firm that has received substantial legal fees from the City of Chicago. These claims are baseless as a matter of law.

Plaintiff alleges four counts against Mr. Neal, including violation of procedural due process, equal protection, the Voting Rights Act and mail fraud. All counts depend -- as a threshold matter -- on Plaintiff's ability to establish standing under Article III of the United States Constitution. Even under the broadest and most liberal reading of the complaint, Plaintiff, as a matter of law, cannot establish standing because Plaintiff has not alleged a cognizable injury traceable to any improper conduct by Mr. Neal. This Court, therefore, should dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Moreover, while Plaintiff alleges four different counts, each count requires some allegation of wrongful action that has deprived Plaintiff of his constitutional rights. Plaintiff fails to state any legitimate claim, because even if -- contrary to fact -- Plaintiff's factual allegations were true, Plaintiff cannot demonstrate that Mr. Neal's alleged conflict of interest deprived Plaintiff of his right to vote.

In Part I, we summarize the relevant allegations of the Complaint.

In Part II, we demonstrate that the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff fails to show standing sufficient for an Article III case or controversy.

In Part III, we demonstrate that the Complaint also should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because, as a matter of law, Plaintiff's allegations do not establish that there is an impermissible conflict of interest or that Mr. Neal intentionally or purposefully deprived Plaintiff of his right to vote.

## I.      Allegations Of The Complaint.

Although Mr. Neal disputes many of the facts alleged in the Complaint, for purposes of this motion to dismiss, the Court may accept as true the following material allegations made by Plaintiff.  Thompson v. Ill. Dept. of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

Plaintiff alleges that he is a United States citizen, voter and voting rights activist in the City of Chicago.  (Compl. ¶ 5.)  Plaintiff alleges that on January 12, 2006, the Circuit Court of Cook County appointed Langdon Neal as Chairman of the Chicago Board of Election Commissioners to serve until November 30, 2008.  (Id. ¶¶ 6, 10.)  Plaintiff alleges that Mr. Neal also is an attorney at the law firm of Neal & Leroy.  (Id. ¶ 12.)  Plaintiff maintains that Neal & Leroy has received between four and ten million dollars in legal fees from the municipality of the City of Chicago, the Mayor's Corporation Council and the City Law Department.  (Id. ¶ 11.)

Plaintiff alleges that in recent elections there have been "multiple serious election problems of large magnitudes."  (Id. ¶ 14.)  Plaintiff asserts that on October 23, 2006, the Illinois

Ballot Integrity Project reported that Peter Zelchencko, a 43rd Ward Aldermanic candidate, recognized "a glitch in the Chicago Voters Registration which comprised 1.5 million voters in Chicago Social Security Number and other confidential information." (Id. ¶ 16.) Plaintiff claims that the Illinois Ballot Integrity Project contacted Mr. Neal "to no avail for a prolonged time." (Id. ¶ 17.) Plaintiff does not allege that he has any relationship with Mr. Zelchencko or the Illinois Ballot Integrity Project.

Plaintiff further alleges that in past elections absentee ballots were compromised, the system caused major delays and showed "online voters after registering before the deadline date as unregistered after the registration deadline has past," and Mr. Neal allowed disposal of ballots without requiring disposal certificates pursuant to Illinois Local Records Act (50 ILCS 205). (Id. ¶¶ 18-21.) Plaintiff then alleges that "[j]ust recently there have been issues about Candidacy Signatures in the City of Chicago for Candidacy of Mayor of the City of Chicago." (Id. ¶ 25.)

Plaintiff alleges that Mr. Neal's "objectivity" and "independence in judgment" as an election commissioner is impaired because he is both Chairman of the CCBEC and an attorney whose law firm has performed legal work for the City of Chicago. (Id. ¶ 13.) Plaintiff asserts that this situation creates a financial conflict of interest between Mr. Neal's professional activities and the proper discharge of his duties as Chairman of the CCBEC. (Id. ¶¶ 22, 24, 28.) Plaintiff alleges that Mr. Neal's conflict of interest and "actions constitute a pattern, practice and unspoken policy" that impair Plaintiff's rights under the First and Fourteenth Amendments and the Voting Rights Act. (Id. ¶¶ 32, 33.) Plaintiff does not allege that he is a candidate for office or has ever been a candidate for office. Nor does Plaintiff allege that he has ever been denied the right to vote. Indeed, at no point in the Complaint does Plaintiff allege any facts showing that Mr. Neal of the CCBEC has ever taken any actions that relate to Plaintiff's rights.

In Count I, Plaintiff alleges that Mr. Neal's conduct deprived Plaintiff of his right to free liberty, free choice, free association, free expression and free protest as protected by the First Amendment and impaired Plaintiff's freedom of choice in the voting process without procedural due process under the Fourteenth Amendment. (Id. ¶ 35.) In Count II, Plaintiff asserts that by burdening Plaintiff with the conflict of interest, Mr. Neal deprived and threatens to deprive Plaintiff of his Fourteenth Amendment right to free liberty and equal protection. (Id. ¶ 38.) In Count III, Plaintiff maintains that his right to freely vote in accordance with the Voting Rights Act[1] has been impaired by the conflict between Mr. Neal's legal obligations to the City of Chicago and Plaintiff's constitutional guarantees in the voting process. (Id. ¶ 41.) In Count IV, Plaintiff claims that Mr. Neal has deprived and continues to deprive Plaintiff of the intangible right of honest services in violation of the mail fraud statute, 18 U.S.C § 1346. (Id. ¶ 44.) Plaintiff seeks declaratory and injunctive relief.

## II. Plaintiff's Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1) Because Plaintiff Lacks Constitutional Standing Under The Case And Controversy Provision Of Article III.

This Court should dismiss the Complaint in its entirety because this Court lacks subject matter jurisdiction. Even taking all of his allegations as true, Plaintiff cannot satisfy any requirement necessary for Article III standing. Plaintiff has not and will not suffer any cognizable injury traceable to the acts of Mr. Neal and capable of resolution and redress by the requested relief.

---

[1] In the Complaint, Plaintiff refers to Count III as Violation of the United States Voters Right Act. We assume Plaintiff intends to allege a violation of the Voting Rights Act of 1965. Plaintiff fails to identify the specific provision of the Voting Rights Act that Mr. Neal allegedly violated, though, it appears that Plaintiff attempts to assert a violation of Section 2. 42 U.S.C § 1973 (forbidding any voting scheme which results in a denial or abridgment of the right to vote on account of race, color or membership in a language minority group). Plaintiff does not allege his racial background.

A party seeking to invoke subject matter jurisdiction of the federal courts bears the burden of establishing, by more than unadorned speculation, each element of standing under Article III. O'Sullivan v. City of Chicago, 396 F.3d 843, 852 (7th Cir. 2005); Plotkin v. Ryan, 239 F.3d 882, 884 (7th Cir. 2001). The three elements needed to satisfy standing are: "(1) 'injury in fact;' (2) a causal connection between the injury and the challenged conduct, i.e., 'traceability;' and (3) that is 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Plotkin, 239 F.3d at 884 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)). In resolving whether a plaintiff has satisfied its burden, "unadorned speculation will not suffice to invoke the federal judicial power." Plotkin, 239 F.3d at 884 (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 44, 96 S. Ct. 1917, 1927 (1976)); See also Whitmore v. Ark., 495 U.S. 149, 155-56, 110 S. Ct. 1717, 1723 (1990) (the plaintiff "must clearly and specifically set forth facts sufficient to satisfy [the] Article III standing requirements."). Moreover, conclusory allegations must be ignored when deciding a motion to dismiss for lack of standing. Alger v. City of Chicago, 753 F. Supp. 228, 231 (N.D. Ill. 1990).

Here, Plaintiff cannot meet his burden of establishing voter standing under Article III because Plaintiff has failed to allege any discernable injury caused by Mr. Neal's actions. This is true for three reasons. First, Plaintiff has not demonstrated that he suffered an "injury in fact." Second, even assuming (contrary to fact and for purposes of argument only) Plaintiff did suffer a personalized injury, Plaintiff cannot show any causal connection between Plaintiff's alleged injury and the challenged conduct of Mr. Neal. Third, it is entirely speculative that a favorable decision to grant Plaintiff's request for injunctive and declaratory relief would likely redress the generalized injuries Plaintiff allegedly suffered.

**A.** **Plaintiff Lacks Article III Standing Because Plaintiff Has Failed To Allege Any Discernable Injury To Himself.**

Plaintiff does not - and cannot - allege that he suffered an "injury in fact" by more than unadorned speculation. To establish an "injury in fact," Plaintiff must show invasion of a legally protected interest that is "(a) concrete and particularized and (b) actual or imminent not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136; O'Sullivan, 396 F.3d at 854. See also Whitmore, 495 U.S. at 155, 110 S. Ct. at 1723 (holding that the injury must be "distinct and palpable").

Courts have consistently refused to recognize generalized grievances about government as an "injury in fact" sufficient for standing under the Article III case and controversy provision. Lujan, 504 U.S. at 573-74, 112 S. Ct. at 2143-44. The Supreme Court has held that a plaintiff "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large" lacks constitutional standing. Id.; See also O'Sullivan, 396 F.3d at 857 (recognizing that generalized complaints by voters were not sufficient to justify the injury in fact requirement); Plotkin, 239 F.3d at 886 (holding that plaintiffs were no more than "concerned bystanders" because the alleged injury was too generalized). In other words, a voter challenging any governmental action that impacts the political process must suffer "a direct and palpable injury, different from any injuries suffered by a member of the general public." O'Sullivan, 396 F.3d at 867.

In addition, if a plaintiff alleges a threat of future injury, the plaintiff "must show a significant likelihood and immediacy of sustaining some direct injury." Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir. 1993) (holding that the mere possibility of some future act by

defendant against plaintiff was purely speculative and did not support standing to establish a real and immediate case or controversy).

Here, the allegations in the Complaint do not amount to anything more than vague, general, speculative and conclusory statements that Plaintiff's constitutional rights have been violated. (Compl. ¶¶ 2, 15, 28, 32, 33, 35, 38, 41, 44.) The Complaint alleges a series of broad injuries that could be experienced by most voters, not Plaintiff specifically. For example, Plaintiff contends that Mr. Neal's alleged conflict of interest (i) "places a burden on Plaintiff and all other voters in the City of Chicago in violation of their constitutional and voters right to a democratic process" (Id. ¶ 15.); (ii) "would serve to the impairing of the Plaintiff and other voters to allow him to continue in such capacity in furthering the breaching of their Constitutional right to due process of the First and Fourteenth Amendment and under the Voters Right Act" (Id. ¶ 28.); and (iii) threatens Plaintiff and other voters with the continuing injury of "[v]oting fraud, theft of votes, an undue process in the election process, a scheme or artifice to deprive the public of the intangible right of honest services." (Id. ¶ 33.)

These generalized and vague complaints, however, must be ignored when deciding a motion to dismiss for lack of standing. Alger, 753 F. Supp. at 231 ("conclusory allegations, to be distinguished from well-pleaded facts, are properly ignored in a motion to dismiss for lack of standing"). Absent Plaintiff's conclusory and abstract allegations, the Complaint does not allege any well-pled facts regarding what *personal* injuries Plaintiff suffered. Plaintiff does not - and cannot - state that his personal right to vote was impaired in any manner, which is the cognizable injury necessary for standing purposes in cases alleging due process and equal protection violations of the right to vote. See O'Sullivan, 396 F.3d at 855 (explaining that only those individuals who claimed that they were personally denied equal treatment were in a position to

challenge governmental conduct of which they do not approve).  Plaintiff's allegations of

constitutional violations (which are factually and legally baseless) arguably are felt by

innumerable others and thus do not establish an injury in fact.  The alleged injuries suffered by

Plaintiff merely amount to generalized grievances.  Moreover, the mere possibility of sustaining

some direct injury in the future is insufficient for standing purposes.  <u>Knox</u>, 998 F.2d at 1413;

<u>Alger</u>, 753 F. Supp. at 231.  Without a single allegation of a "concrete and particularized" and

"actual or imminent not conjectural or hypothetical" injury to himself, Plaintiff has no voter

standing to bring his claims against Mr. Neal.  <u>O'Sullivan</u>, 396 F.3d at 854.

> **B.      Plaintiff Lacks Article III Standing Because Any Alleged Injury Cannot Be
>           Fairly Traced To The Challenged Conduct Of Mr. Neal.**

Plaintiff also must allege facts that support the second requirement -- "traceability,"

which is the sufficient causal connection between Plaintiff's alleged injuries and Mr. Neal's

alleged conflict of interest.  <u>Plotkin</u>, 239 F.3d at 884; <u>O'Sullivan</u>, 396 F.3d at 856.  In deciding

whether a plaintiff's injury is fairly traceable to a defendant's activity, the injury asserted cannot

be attributed to intervening events that are contingent on other factors.  <u>Plotkin</u>, 239 F.3d at 886;

<u>O'Sullivan</u>, 396 F.3d at 856.  In <u>O'Sullivan</u>, the Seventh Circuit noted that the connection

between the alleged injury -- dilution of the voters' political voice -- and the asserted illegal

conduct -- defendant's patronage hiring -- was too attenuated to satisfy the standing requirement

of "traceability."  396 F.3d at 856, 867.  The Seventh Circuit further held that if the line of

causation depends upon countless individual decisions and various factors not capable of

articulation, voters cannot assert "'with the certainty required by the case-and-controversy

requirement' that the injury to their political voice was 'fairly traceable' to the actions of the

defendants."  <u>Id.</u> at 867 (citing <u>Shakman v. Dunne</u>, 829 F.2d 1387, 1397 (7th Cir. 1987)).

Here, Plaintiff's claims are deficient on their face because Plaintiff does not allege any facts regarding how Plaintiff has been injured by Mr. Neal's alleged conflict of interest.  Plaintiff generally alleges impairment of his rights because (i) in past elections absentee ballots were compromised and ballots were disposed of without disposal certificates (Compl. ¶¶ 18, 21.); (ii) there have been issues about the candidacy signature process (Id. ¶¶ 25-27.); (iii) a computer glitch in online voter registration databases may have compromised the names, addresses, birth dates and Social Security numbers of more than 1.5 million voters (Id. ¶ 16.); and (iv) the online voter registration system may have improperly documented whether a voter was registered.  (Id. ¶ 20.)

These allegations do not satisfy Plaintiff's burden of explaining how the alleged injuries are fairly traceable to any improper action by Mr. Neal.  Plaintiff simply alleges, without providing any basis for his belief, that it is an impermissible conflict of interest for Mr. Neal to serve as the election chairman and own a law firm.  (Id. ¶13.)  This allegation is mere conjecture and does not establish a causal connection between the alleged flaws and irregularities in the voting process and Mr. Neal's alleged conflict of interest.  The allegations in the Complaint do not bring Plaintiff within the requirements of Article III standing because the line of causation between the alleged injury and challenged conduct is too attenuated.  Plotkin, 239 F.3d at 886; O'Sullivan, 396 F.3d at 856, 867.  Any alleged problem in the voting process can arguably be attributed to many intervening factors not capable of articulation and beyond Mr. Neal's actions. O'Sullivan, 396 F.3d at 856.  The Complaint is entirely devoid of a single well-pled allegation that would even support a remote connection between the alleged conflict of interest and any impairment of Plaintiff's voting rights, let alone a "causal connection" required by Article III. Lujan), 504 U.S. at 561, 112 S. Ct. at 2136.

**C.** **Plaintiff Lacks Article III Standing Because Plaintiff Cannot Establish That The Alleged Injuries Will Be Redressed By The Requested Relief.**

Plaintiff also does not have voter standing to bring his broad challenges of constitutional violations against Mr. Neal because the Complaint fails to allege any fact that supports "redressability," the third necessary element for Article III standing. To properly allege redressability, Plaintiff must demonstrate that "it is 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Plotkin, 239 F.3d at 885. In Plotkin, the alleged injury was that illegal patronage practices, including a bribery scheme, diluted the impact of plaintiffs' votes in the gubernatorial election. Id. at 883. The plaintiffs in Plotkin sought an injunction to impose fines and bar government officials from receiving bribes that funded political campaigns. Id. The plaintiffs contended only that there was a substantial likelihood that similar unlawful conduct would continue because "a deep-seated culture and policy or custom existed of intertwining and requiring coerced partisan political work together with the official duties of the office." Id. at 885. The Seventh Circuit held that these allegations were purely speculative, and that plaintiffs' claims of voter standing failed because the allegations did not establish redressability. Id.

In the present case, the alleged wrongful conduct is Mr. Neal's so-called conflict of interest. Plaintiff then recites several generalized facts about possible problems with voter registration databases, disposal of ballots, and the process of measuring the validity of candidacy signatures. (Compl. ¶¶ 16-21, 25-27.) Plaintiff alleges that the conflict of interest somehow "constitutes a pattern, practice, and unspoken policy" that impairs the constitutional rights of Plaintiff and other voters. (Id. ¶ 32.) To remedy these alleged injuries, Plaintiff requests declaratory and injunctive relief to remove Mr. Neal from his position as Chairman of the CCBEC.

It is wholly unclear from the Complaint that Mr. Neal's alleged conflict of interest creates a "pattern, practice, and unspoken policy" of increasing the likelihood of irregularities in the voting process. This type of unreasonable and unwarranted allegation (i.e., that similar unlawful conduct is substantially likely to continue under the culture of the current administration) is purely speculative as a matter of law. Plotkin, 239 F.3d at 885 (affirming district court's dismissal of plaintiffs' case for lack of standing). Plaintiff's unwarranted inferences that Mr. Neal's alleged conflict of interest increases the risk of potential flaws in the voting process are likewise too speculative. Because it is impossible to ascertain how Plaintiff's request for removal of Mr. Neal from the CCBEC would remedy the alleged injuries, Plaintiff has been unable to establish redressability by more than unadorned speculation. Id. at 884.

**III. Plaintiff's Complaint Must Be Dismissed For Failure To State A Claim Pursuant To Rule 12(b)(6) Because Plaintiff Cannot Demonstrate (A) That An Impermissible Conflict Of Interest Exists, (B) That He Suffered A Deprivation Of His Constitutional Rights, And (C) That Mr. Neal Acted With Discriminatory Intent.**

The Complaint sets forth claims that allege a violation of due process (Count I), equal protection (Count II), the Voting Rights Act (Count III), and mail fraud (Count IV). To make out a due process claim, a plaintiff must properly allege and prove three elements: (1) a constitutionally protected property or liberty interest; (2) a deprivation of that interest; and (3) insufficient process in connection with the deprivation. Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989). To satisfy the requirements for an equal protection claim, a plaintiff must properly allege and prove two elements: (1) the defendant's actions had a discriminatory effect; and (2) the defendant acted with a discriminatory purpose. Chavez v. Ill. State Police, 251 F.3d 612, 635-36 (7th Cir. 2001). A plaintiff asserting a violation of Section 2 of the Voting Rights Act must establish that based on the totality of circumstances, a voting qualification, practice or procedure denied or abridged minority voters an equal opportunity (1) to participate in the

political process and (2) to elect representatives of their choice. 42 U.S.C. § 1973(b). To

properly allege and prove a criminal mail fraud charge, the government must satisfy the

following elements: (1) the defendant participated in a scheme to defraud, which includes the

intangible right to honest services; (2) the defendant acted with intent to defraud; and (3) the mail

was used in furtherance of the fraudulent scheme. 18 U.S.C. §§ 1341, 1346. As noted below (at

15-16), there is no civil cause of action under the mail fraud statute.

A.   **Each Count Is Defective As A Matter Of Law Because Mr. Neal's Service As Chairman Of The CCBEC And His Ownership Of A Law Firm That Performs Legal Work For The City Of Chicago Does Not Create Any Legal Problems.**

Each of Plaintiff's claims is premised on the supposed conflict between Mr. Neal serving

as Chairman of the CCBEC and, at the same time, owning a law firm that provides legal service

to the City of Chicago. But, there is no legal conflict here, and Plaintiff's claims should be

dismissed. In determining whether an unconstitutional bias or conflict of interest exists, the

party asserting this type of claim must overcome a "presumption of honesty and integrity in

those serving as adjudicators." Amundsen v. Chicago Park Dist., 218 F.3d 712, 716 (7th Cir.

2000). To rebut this presumption, a party must establish a disqualifying bias that "is too high to

be constitutionally tolerable." Id. This standard requires proof of a direct pecuniary interest in

the outcome or personal abuse or criticism. Id. In Amundsen, the Seventh Circuit held that the

hearing officers' employment by the park district was insufficient to establish actual bias or a

disqualifying interest. Id.

Similarly, in Van Harken v. Chicago, the court opined that "the mere fact that an

administrative or adjudicative body derives a financial benefit from fines or penalties that it

imposes is not in general a violation of due process." 103 F.3d 1346, 1353 (7th Cir. 1997). In

<u>Van Harken</u>, the court affirmed the district court's dismissal of plaintiffs' federal constitutional claim because it found that an indirect, tenuous financial stake was not enough to disqualify individuals on constitutional grounds.  <u>Id.</u> at 1352-53.  <u>See</u> <u>also</u> <u>Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n</u>, 426 U.S. 482, 496-97, 96 S. Ct. 2308, 2316 (1976) (holding that the board's involvement as negotiator for the teachers in an unsuccessful collective bargaining that caused a strike which led to the firing of the teachers did not demonstrate the sort of bias necessary to disqualify the board as decision makers as a matter of federal due process); <u>Osterberg v. Bd. of Trs. of the State Employees' Retirement Sys.</u>, 722 F. Supp. 415, 418 (N.D. Ill. 1989) (holding that plaintiff's complaint failed to state a due process claim because the allegations that defendants were biased were too conclusory and did not reveal actual prejudice); <u>Jones v. Bd. of Educ. of Twp. High Sch. Dist.</u>, 651 F. Supp. 760, 767-68 (N.D. Ill. 1986) (holding that employment positions "do not of themselves reasonably create an inference of bias.").

Here, Plaintiff argues that Mr. Neal's service as Chairman of the CCBEC and owner of a law firm performing legal service for the City of Chicago creates an impermissible conflict of interest.  Plaintiff's bald accusations and conclusory statements of an alleged conflict of interest do not reveal actual bias or prejudice.  <u>Amundsen</u>, 218 F.3d at 716; <u>Osterberg</u>, 722 F. Supp. at 418; <u>Jones</u>, 651 F. Supp. at 767-68.  Moreover, the mere fact that Mr. Neal derives a financial benefit as the owner of a law firm that engages in real estate work for the City of Chicago does not disqualify Mr. Neal from serving as an election commissioner.  <u>Van Harken</u>, 103 F.3d at 1353.  Mr. Neal's ownership of a law firm is wholly unrelated to the subject matter of his position as Chairman of the CCBEC, and Mr. Neal is not paid according to the outcome of the elections he oversees.  Even under the broadest and most liberal reading of the Complaint,

Plaintiff's allegations do not amount to anything more than a "very indirect, very tenuous stake," which as a matter of law, is not enough to disqualify Mr. Neal from serving as Chairman of the CCBEC on constitutional grounds.  Id.  Therefore, Plaintiff's allegations are entirely insufficient to overcome the presumption of honesty and integrity by establishing the sort of bias necessary to disqualify Mr. Neal from serving as an election commissioner.

**B.      Count I, Count II And Count III Are Defective As A Matter Of Law Because Plaintiff Has Not Suffered An Actual Deprivation Of His Right To Vote.**

In Counts I-III, Plaintiff alleges that his constitutionally and statutorily protected right to vote has been violated.  These claims turn on the threshold legal question of whether Plaintiff suffered an actual impairment of his right to vote.  It is textbook constitutional law that a plaintiff challenging the constitutionality of government conduct must demonstrate an actual deprivation of fundamental rights.  Miller v. Kusper, 445 F.2d 1059, 1061 (7th Cir. 1971).  In Miller, the court held that the plaintiffs did not allege that defendants' conduct operates to treat the plaintiffs unequally as compared with any other persons.  Id.  Without asserting unequal treatment or establishing any kind of classification, a plaintiff fails to state a constitutional claim under which relief can be granted.  Id.  Similarly, the Voting Rights Act prohibits the imposition of a voting procedure that *results* in a denial or abridgment of the right to vote on account of race, color or membership in a language minority group.  42 U.S.C. § 1973(a) (emphasis added); Chisom v. Roemer, 501 U.S. 380, 397-98, 111 S. Ct. 2354, 2365 (1991) (stating that Section 2 "claims must allege an abridgment of the opportunity to participate in the political process *and* to elect representatives of one's choice.").

Even accepting the Complaint's material allegations as true, Plaintiff's assertions are entirely insufficient, as a matter of law, to constitute a denial of any constitutional rights.

Plaintiff's factual allegations, like the plaintiffs' allegations in <u>Miller,</u> do not show any personal injury and do not demonstrate that Mr. Neal treated Plaintiff unequally as compared to other voters. 445 F.2d at 1061. Moreover, nowhere does Plaintiff allege that his right to participate in the political process, to elect representatives of his choice, or to vote was denied on account of his race, color or membership in a language minority group. 42 U.S.C. § 1973(a).[2] Rather, as demonstrated above in Section II (A), allegations that Mr. Neal's conflict of interest burdens Plaintiff and other voters do not amount to anything more than generalized grievances and wholly speculative assertions of possible injuries. (Compl. ¶¶ 15, 28, 33.) The Complaint, therefore, simply does not satisfy Plaintiff's burden of showing an actual deprivation of his right to vote and to elect representatives of his choice. Accordingly, as a matter of law, Plaintiff has no basis for Count I (due process), Count II (equal protection), and Count III (Voting Rights Act).

C. **Each Count Is Defective As A Matter Of Law Because Plaintiff Cannot Demonstrate That Mr. Neal Acted With Discriminatory Intent Or Misused His Position.**

Plaintiff can only proceed on his due process (Count I), equal protection (Count II), Voting Rights Act (Count III), and mail fraud (Count IV) claims if Plaintiff can establish that Mr. Neal, acting under the color of state law, engaged in some wrongful or discriminatory action that deprived Plaintiff of rights secured by the Constitution or laws of the United States. <u>Polenz</u>, 883 F.2d at 555.

Specifically, mail fraud under the intangible right to honest services doctrine hinges on the *misuse* of a defendant's public position (or the information the defendant obtained in it) for personal gain. <u>U.S. v. Bloom</u>, 149 F.3d 649, 654-58 (7th Cir. 1998). <u>Bloom</u> was a criminal case.

---

[2] Plaintiff does not allege his racial background.

The federal mail fraud statute does not contain an express private right of action, and courts have uniformly held that there is no implied private right of action for violations of the criminal mail fraud statute. <u>Foley v. Plumbers & Steamfitters Local #149</u>, 109 F. Supp. 963, 970 (N.D. Ill. 2000); <u>Bajorat v. Columbia-Breckenridge Dev., Corp.</u>, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996). Count IV, therefore, should be dismissed as a matter of law. Moreover, in <u>Bloom</u>, the Seventh Circuit held that the indictment did not allege that the defendant misused his position for personal gain, and therefore, did not state a mail fraud offense under the intangible rights theory. <u>Id.</u> at 657-58. In reaching this decision, the court rejected the argument that the lawyer-alderman defendant deprived the city of his honest services and undivided loyalty by giving a client advice that could harm the city's financial interests. <u>Id.</u> at 650-51, 654-58. The court reasoned that "some conflicts of interest are tolerable." <u>Id.</u> at 654.

A claim for violation of Section 2 of the Voting Rights Act also requires a showing of some causal connection between the alleged discriminatory conduct and the challenged voting procedure that results in the denial or abridgment of the right to vote. <u>Ortiz v. City of Phila. Office of City Com'rs Voter Registration Div.</u>, 28 F.3d 306, 310-312 (3d Cir. 1994). As such, allegations of isolated election irregularities and errors, which do not demonstrate that an official actor bore responsibility for any act causing the deprivation, are not sufficient to sustain a Voting Rights Act claim. <u>Welch v. McKenzie</u>, 765 F.2d 1311, 1315-16 (5th Cir. 1985) (holding that "[w]ithout racial motivation or state-created impairment of black votes, there was no violation of Section 2 of the Voting Rights Act.").

Similarly, a claim challenging the constitutionality of government action requires allegations of intentional or purposeful discrimination. <u>Snowden v. Hughes</u>, 321 U.S. 1, 7-11, 64 S. Ct. 397, 400-403 (1943) (affirming dismissal of plaintiff's complaint because it failed to show

purposeful discrimination between persons or classes of persons). In <u>Snowden</u>, the Supreme

Court held that even though the state canvassing board erroneously failed to certify petitioner as

a duly elected nominee, this mistake without allegations of intentional discrimination, did not

translate into a denial of any constitutional right. <u>Id.</u> at 7-8, 400-401. Since <u>Snowden</u>, federal

courts routinely have recognized that not every election irregularity or voting impropriety that

impairs a person's right to vote gives rise to a constitutional claim. <u>Hennings v. Grafton</u>, 523

F.2d 861, 864 (7th Cir. 1975). In other words, no constitutional guarantee exists to remedy

errors in the voting process without allegations of purposeful or systematic discrimination of

certain classes of voters. <u>Id.</u> In <u>Hennings</u>, the Seventh Circuit determined that irregularities in

the voting process caused by mechanical or human error, which lacked invidious or

discriminatory motive, did not create constitutional violations. <u>Id.</u> at 864-65. <u>See</u> <u>also</u> <u>Miller</u>,

445 F.2d at 1061 (holding that plaintiff's cause of action was defective as a matter of law where

the complaint did not show that defendants misused the power of their offices or applied the law

in an unconstitutional manner). Therefore, in order "to prove a state infringement of the

constitutionally protected right to vote, it is not enough merely to show facts related to the

management of elections and then allege a violation . . . an aggrieved party must go further and

demonstrate how these facts cause an impairment of that right." <u>Harris v. Conradi</u>, 675 F.2d

1212, 1216 (11th Cir. 1982). The <u>Harris</u> court reasoned that without allegations or proof of

actual fraud, the "naked possibility that election officials will violate their oaths" does not

demonstrate that the election administrative process "lacks integrity." <u>Id.</u>

       Here, even assuming (contrary to fact and for argument only) that Plaintiff's right to vote

was impaired, each claim requires allegations that Mr. Neal engaged in some discriminatory

practice or misused his position for personal gain. <u>Snowden</u>, 321 U.S. at 7-11, 64 S. Ct. at 400-

403; <u>Bloom</u>, 149 F.3d at 57-58; <u>Hennings</u>, 523 F.2d at 864; and <u>Miller</u>, 445 F.2d at 1061. It appears that Plaintiff attempts to satisfy this burden by merely alleging (1) that the conflict of interest *itself* impairs Plaintiff's right to vote; and (2) that irregularities may have occurred in past elections. (Compl. ¶¶ 14-29.) However, these allegations are insufficient to support Plaintiff's claims, because the Complaint utterly fails to allege any purposeful discrimination or abuse of the election commissioner position for personal gain.

There is not a single fact, let alone a well-pled fact, which supports the position that Mr. Neal intentionally discriminated against Plaintiff or that Mr. Neal abused his position as Chairman of the CCBEC. <u>First</u>, Plaintiff's allegations that it is an unconstitutional conflict of interest for Mr. Neal to serve as Chairman of the CCBEC and to work as a lawyer are not adequate to show intentional or purposeful discrimination. (<u>Id.</u> ¶¶ 13, 22, 24, 28.) These allegations are similar to the insufficient allegations in <u>Snowden</u>, in which the Supreme Court determined that although, the state canvassing board violated a state statute and denied plaintiff his right to certification as an elected nominee, plaintiff did not properly allege a constitutional challenge absent a showing of intentional or purposeful discrimination. 321 U.S. at 7-12, 64 S. Ct. at 400-403. <u>Second</u>, as demonstrated above in Section II (B), Plaintiff's vague allegations and unwarranted inferences regarding possible election problems do not demonstrate the necessary causal connection between the alleged conflict of interest and the asserted deprivation of the right to vote. In <u>Hennings</u>, the Seventh Circuit held that no constitutional claim existed where allegations of irregularities in the voting process were not supported with specific facts of discriminatory motive that connected plaintiff's injury to defendant's conduct. 523 F.2d at 864. <u>See</u> <u>also</u> <u>Welch</u>, 765 F.2d at 1315-16 (holding that in order to allege a violation of the Voting Rights Act, plaintiffs must demonstrate that an official actor was responsible for the act that

caused the deprivation of the right to vote). <u>Finally</u>, like the lawyer-alderman defendant in

<u>Bloom</u>, Plaintiff's allegations with respect to Mr. Neal's conflict of interest do not show that Mr.

Neal misused his position as an election commissioner for personal gain. 149 F.3d at 658.

Absent allegations showing that Mr. Neal purposefully discriminated against Plaintiff or in any

way misused his position as Chairman of the CCBEC, this Court should dismiss Plaintiff's

claims with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can

be granted.

### Conclusion

For the foregoing reasons, this Court should dismiss with prejudice Plaintiff's complaint

in its entirety.

Respectfully submitted:

LANGDON NEAL

Dated:  April 6, 2007

By:  s/Jeffrey Colman
          One of his Attorneys

Jeffrey D. Colman
Melissa S. Wills
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois  60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

1521838.7