1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3   MAURICE PERKINS,                )   No. 07 C 841

4               Plaintiff,          )   Chicago, Illinois
                                    )   April 13, 2007
5                                   )   9:30 o'clock a.m.
    -vs-                            )
6                                   )
                                    )
7   LANDGON NEAL,                   )
                                    )
8               Defendant.          )

9

10      TRANSCRIPT OF PROCEEDINGS - MOTION
     BEFORE THE HONORABLE WAYNE R. ANDERSEN

11  APPEARANCES:

12  For the Plaintiff:     MR. MAURICE PERKINS, pro se
                           4836 South Michigan Avenue
13                         Chicago, Illinois 60615

14
    For the Defendant:     JENNER & BLOCK LLC
15                         One IBM Plaza
                           330 North Wabash Avenue
16                         Chicago, Illinois 60611
                           BY:  MR. JEFFREY D. COLMAN
17                              MS. MELISSA S. WILLS

18

19

20

21

22

23  Court Reporter:        ROSEMARY SCARPELLI
                           219 South Dearborn Street
24                         Room 1412
                           Chicago, Illinois  60604
25                         (312) 435-5815

1          THE CLERK:  Case 7 C 841, Perkins versus Neal.

2          THE COURT:  Hi, Mr. Perkins.

3          MS. WILLS:  Good morning, your Honor.

4          MR. PERKINS:  Good morning, your Honor.

5          MS. WILLS:  Melissa Wills and Jeff Colman here for

6    defendant Langdon Neal.

7          THE COURT:  Hi.

8          MR. COLMAN:  Good morning, your Honor.

9          THE COURT:  Hi, Mr. Perkins.

10         MR. PERKINS:  Good morning, your Honor.

11         THE COURT:  The -- last night I read all the

12   papers.  Actually my law clerk Katie Cook and I were on the

13   phone at -- I think we hung up at 10:10 last night, a number

14   easy to remember, because I feel that we ought to know the

15   status of this now so that going into this election that is

16   in four days -- or three days, you know, legally where you

17   stand.  So I am prepared to hear from Mr. Perkins.  You think

18   you can summarize your position in five or ten minutes?

19         MR. PERKINS:  Yes, sir.

20         THE COURT:  I mean I have read everything, but if

21   there is anything you would like to add, you are welcome to

22   do that.  And then if defense counsel would like to respond,

23   you are welcome to respond.

24         And what I would like to address at this point in

25   time really is the preliminary injunction motion.  And I know

1   that that may relate in a number of fashions to the motion to

2   dismiss, but the urgency is brought upon by the election.  So

3   I feel that whether I grant or deny a preliminary injunction,

4   the Court of Appeals has jurisdiction over that if somebody

5   wants to appeal that.  So why don't we just address that for

6   now, if you wouldn't mind.  Okay?

7           MS. WILLS:  Yes, your Honor.

8           MR. PERKINS:  Yes, sir.

9           THE COURT:  So would you like to make a

10  presentation?

11          MR. PERKINS:  Yes, sir, your Honor.

12          THE COURT:  So if you would like to cede the

13  lectern to him and have a seat, I would -- I certainly won't

14  be offended.

15          Thank you.

16          MR. PERKINS:  First of all, your Honor, we -- once

17  we filed our motion, we attempted to serve Jenner & Block.

18  We went to their offices and they called a gentleman by the

19  name of Mitch, and he declined to accept our motion.

20          THE COURT:  Well, here they are.

21          MR. PERKINS:  Right.  So we did go to the Board of

22  Election Commissioners and served Mr. Scanlon who is the

23  chief legal officer there.  So, you know, I am just -- I

24  point this out because I believe this to be kind of

25  disingenuous to say that we didn't serve them when we made

1    every attempt.

2            THE COURT:  That -- on that subject, as far as I am

3    concerned, all that is waived.

4            MR. PERKINS:  Okay.

5            THE COURT:  They filed papers.

6            MR. PERKINS:  Okay.

7            THE COURT:  They are here in court.  As you know, I

8    called them on the phone yesterday -- called him on the phone

9    to make sure he was engaged and appeared on.

10           MR. PERKINS:  Now, in terms of our preliminary

11   injunction --

12           THE COURT:  Excuse me.  They are on notice.

13           MR. PERKINS:  That is the issue at hand, our motion

14   for preliminary injunction.

15           THE COURT:  Right.

16           MR. PERKINS:  What I say to the Court in terms of

17   our preliminary injunction, we have information here that

18   Langdon Neal has funded and given donations to over 50 of the

19   elected officials here in the City of Chicago.  Dorothy

20   Tillman, being a person that has received funds from Langdon

21   Neal and a person that we no longer desire to lead our

22   community, has been given funds by the Chairman of the Board

23   of Election Commission.

24           May I --

25           THE COURT:  Sure.

1    MR. PERKINS:  -- submit this to your Honor?

2    MR. COLMAN:  We haven't seen that.

3    THE COURT:  Helen.

4    MR. COLMAN:  This is --

5    THE COURT:  Wait just a minute.  Helen, could you

6    just make a copy of these and then we will each have one.  If

7    you could make two, that would be great.

8    THE CLERK:  Yes.

9    THE COURT:  Thanks.

10    MR. PERKINS:  And I also think it was disingenuous

11    for them to come and mislead the Court to the point that we

12    had filed more papers than the rule permitted because we had

13    not done that, your Honor.  And in my haste yesterday I

14    actually gave you, you know, my certified copy to prove that

15    my initial copy was only 11 pages.

16    THE COURT:  There is no -- you know, I read it all.

17    As far as I am concerned, they have had a full chance to

18    respond to everything.  You have not filed too much with the

19    Court, so that is not an issue you need to worry about.

20    MR. PERKINS:  Okay.  But that is the issue that

21    brings up their motion for dismissal.

22    THE COURT:  That -- which -- which I say let's not

23    even address that today.

24    MR. PERKINS:  Okay.

25    THE COURT:  As far as I am concerned, you might not

1    -- you might not have standing to bring this lawsuit. Maybe

2    I don't have power to hear it. But even more urgent than

3    that determination is whether or not your desire to

4    decapitate the Board of Elections at this point by -- by not

5    enjoining Mr. Neal to not function, that is the issue on the

6    table.

7            MR. PERKINS: That is the issue.

8            THE COURT: Right. So let's address that issue.

9            MR. PERKINS: And -- okay, okay.

10          THE COURT: But procedurally I am not --

11          MR. PERKINS: Okay.

12          THE COURT: The plus of having experienced

13    attorneys from your point of view, the defendant having

14    experienced attorneys, is they are -- they are not going to

15    be able to complain about any procedural problems.

16          MR. PERKINS: Yes, sir.

17          THE COURT: They are -- they are people who track

18    very fast. They have had a lot of experience in these areas.

19    As far as I am concerned, everything that you have filed, I

20    have read as well, as everything they have filed. And we are

21    here so that I can determine whether or not I should issue a

22    preliminary injunction.

23          If you could give one to defense and one to Katie,

24    that would be great.

25          MR. PERKINS: Your Honor --

1    THE COURT:  Don't worry about any of the procedural

2  things.  Here we are.

3    MR. PERKINS:  I won't worry about that, but, you

4  know, as I stood in your courtroom yesterday, you know, I see

5  the Shakman case being heard while we were being -- waiting.

6    THE COURT:  Right.

7    MR. PERKINS:  What we are seeing is this, your

8  Honor:  Mr. Langdon Neal in his position ethically and

9  legally should not be donating to candidates that are going

10  to be running for office in races that he is overseeing.

11    THE COURT:  What -- now, what evidence -- what law

12  do you have that says he can't do it?  I mean ethically I

13  think you have a point.  All right?  And certainly that is

14  something the circuit judges ought to consider when they

15  appoint people to the Board of Election Commissioners.

16    MR. PERKINS:  Right.

17    THE COURT:  But legally speaking the research that

18  I have made in the last 22 hours does not unveil any

19  statutory disability that those contributions would make.  It

20  might be a good idea, but I am not -- I don't -- you haven't

21  given me any authority which says he can't do that.

22    MR. PERKINS:  All I say to you is it gives the

23  signs of a criminal conspiracy when one in such a sensitive

24  governmental position can be given over $10 million in no bid

25  contracts.  Is the public to think that that serves our

1   interests, that one would be given $10 million in no bid

2   contracts to serve over our elections, and then those very

3   election he donates to other candidates that he is overseeing

4   the race?

5           I marched downtown with County Commissioner Tony

6   Peraica when we saw that things were going awry down here.  I

7   was up there when Todd Stoger's legal defense team had

8   Sequoia who is getting $26 million as one of their

9   representatives.  I saw how they handle those ballots coming

10  in all times of night.  The Governor's race came in the same

11  night.  It took four days for Cook County Commissioner Tony

12  Periaca to have that race taken.

13          And we have put an integrated group of people

14  together that were of the opinion that Commissioner Peraica

15  would not wholesale layoff African Americans, do the things

16  that we have seen.  And by virtue of that election and other

17  elections people are being harmed.

18          I am of the impression that based on the corruption

19  and things that go on in City Hall that the African American

20  community has lost a billion dollars a year for the last

21  decade in terms of Hired Truck, in terms of minority fraud

22  contracting.  All of this power stems from elections which

23  Chairman Langdon Neal officiates.  You go to the five poorest

24  black wards on the south side and west side, you can see the

25  scourge of not having the resources and funds to deal with

1    our young people.  All this stems from the electoral process,

2    you know, and we need him to be stopped from doing this.

3         Now, I have one more document I would like to pass

4    out, and this really culminates the reason that we are in

5    this Court seeking justice, because we are the victims.  We

6    are not approaching him or victimizing him.  He and his

7    family for the last three generations have been the overseers

8    of African Americans like myself.

9         THE COURT:  "He" meaning Neal?

10        MR. PERKINS:  I mean Neal -- Earl Neal, Judge Neal.

11   He was a judge when most blacks weren't graduating from high

12   school.  So they have basically been the overseers of this

13   plantation politics.  And it is crucial that we stop him.

14        And he is donating to candidates also.  He could

15   not serve on the State Board of Election Commissioners being

16   a registered lobbyist.  He can come into our community and

17   tell me that the City has to have my property and eminent

18   domain and just take what I have in life.  And I think that

19   he needs to be stopped.  I think we have shown enough -- just

20   the mere fact that he is donating to candidates in races he

21   is calling, Judge.

22        THE COURT:  Have you -- to what extent have you

23   called any of these arguments to the attention of Judge Evans

24   and his colleagues who actually are responsible for the

25   appointment?

1          MR. PERKINS:  Well, it is all the old regular
2     Democratic Party.  That is why I am in federal court.  That
3     is not the system by which our grievances and law can be
4     abated.  They are all one big, happy family.  You know that
5     as well as I do.  And we are going nowhere with them because
6     it is not justice, Judge.  It is just not over there.  And
7     that is why we appeal to the Courts of the United States for
8     justice, because when you said I had an uphill battle
9     yesterday, you know, well, I am a black man and I certainly
10    understand what uphill is.  But Langdon Neal, he is hurting
11    us.  You can stop him from hurting us.  There has been enough
12    snafus in the last two or three elections as evidence that
13    something needs to happen.
14          Sequoia, $26 million.  The County Board is saying
15    they don't want to pay this.  This is wrong.  Langdon Neal is
16    saying, pay them, pay them.  You know, I mean this is not
17    right.  You know, we can't free ourselves from this tyranny
18    if you won't restore the integrity to the vote.  And he needs
19    to be moved.
20          And I just got these last -- two for them and one
21    for you.  And that is my presentation.
22          THE COURT:  And then let's hear what defense
23    counsel has to say.  Thank you.
24          Okay.  So whose button are you wearing?
25          MR. PERKINS:  This is Miss Pat Dowell, a very nice,

1   humane, dignified lady.  We are trying to get Dorothy Tillman
2   to go.  She is racial, divisive, obnoxious.  You know, we
3   need a chance out there.  And Langdon Neal is donating to
4   Dorothy Tillman, and that is not right.
5           THE COURT:  Thank you very much.  You have a -- you
6   have a point I would say.  All right.
7           Would you state your name for the record.
8           MS. WILLS:  Yes, your Honor.  I am Melissa Wills.
9           THE COURT:  Hi, Miss Wills.  Thanks for coming on
10  such short notice.
11          MS. WILLS:  You are welcome.
12          THE COURT:  Thanks for bringing Mr. Colman.
13          MS. WILLS:  Your Honor, respectfully, we stand --
14          THE COURT:  Mr. Perkins, rather, if you would like
15  to sit up closer where you can hear what she has to say, you
16  are welcome to.
17          Is that your purse?
18          MS. WILLS:  Yes, that is.
19          THE COURT:  As long as you switched tables, you
20  might want to move that over.
21          MS. WILLS:  Sure.
22          THE COURT:  Thanks.
23          MS. WILLS:  Your Honor, as I said, we respectfully
24  stand on our motions that we have filed.
25          Quickly to respond to the additional information

1   that we just received from Mr. Perkins regarding the -- we

2   don't know who Alfred Neal is or Delores Neal who appear on

3   the sheet that he gave us. And Mr. Earl Neal was Lang's

4   father and he actually passed away about 18 months ago. And

5   the only two contributions that come from Mr. Lang Neal

6   himself were from 1994 and 1995. And Mr. Neal was not

7   appointed to the Commissioner position until 2006.

8         And so basically, as I said, we stand on our

9   motions. We do not believe that this plaintiff has standing

10   of our case or controversy to bring his claim and, therefore,

11   we do not believe there is any claim he can state for relief

12   upon it. So there is no reasonably likelihood of success on

13   the merits. And without that threshold or prerequisite, a

14   preliminary injunction is not appropriate in this case.

15         THE COURT: The -- with respect to the -- what

16   Mr. Perkins cites, as you know, conflicts of interest,

17   contributions to campaigns when you are overseeing the

18   election machinery and so on, what is your thought on that?

19         MS. WILLS: As we said, your Honor, the

20   contributions that he gave were in 1994 and 1995 and that is

21   not when he was in a position as Commissioner Chairman. And

22   so as a Commissioner there is no allegations or facts showing

23   that there is a contribution to --

24         THE COURT: Do you know who the other commissioners

25   are now?

1    MS. WILLS:  Your Honor, I am not aware of the other

2    two names of the commissioners.

3    THE COURT:  Do you know, Mr. Perkins?  We have

4    three commissioners, right?

5    MR. PERKINS:  I believe there is a Mr. Cowen and --

6    I am not certain, your Honor.

7    THE COURT:  Okay.  All right.  So -- so your

8    position is -- at least as far as the preliminary injunction

9    is concerned, your position is that Mr. Perkins has not

10   provided any evidence of something that would create a legal

11   disability.  I gather that you as I, would, if we were

12   counseling the circuit judges, might well say to them, look,

13   if you accept this sort of appointment, you are going to have

14   to create some distance between yourself and those whose

15   elections you are overseeing because you have got to be --

16   you should be -- there should be some degree of impartiality

17   in this.

18   Do you agree with that?

19   MS. WILLS:  Your Honor, I agree that there should

20   be some degree of impartiality.  And we -- I just don't

21   believe that there are any facts alleging that Mr. Neal has

22   any unconstitutional conflict of interest that would

23   disqualify him from the position of Chairman of the election

24   commissioners.

25   THE COURT:  Okay.  Here is what I am going to do:

1          Thank you.

2          MS. WILLS:  Thank you.

3          THE COURT:  I know this is very brief.  And I read

4    everything last night.  And actually before reading it last

5    night I reflected on what Mr. Perkins had to say.  And as you

6    may know, Mr. Perkins, I have been -- I have squandered much

7    of my life involved in elections.  And as you know, there is

8    -- one of the frustrations is is there is no consolation

9    prize for the loser.

10          Another frustration, having grown up in this

11   County, is that I see the Illinois election law scheme,

12   which, for example, creates electoral boards to -- as you

13   know, to oversee before the Court gets various challenges to

14   petitions and so on.  Electoral boards are extremely

15   interested.  You know, usually they are the chief elected

16   officials who are the buddies or the enemies of the people

17   who are running in their towns or whatever.

18          So insofar -- and I, like everybody who is

19   overinterested in election returns, felt a unique frustration

20   during the last couple elections --

21          MR. PERKINS:  Yes.

22          THE COURT:  -- as returns were not properly

23   counted.  I don't think we can mix up City and the County

24   because it is two separate election administrations.  But I

25   -- you know, I feel a lot of empathy with the criticisms that

1    you have of that.  So I just want you to know --

2    MR. PERKINS:  Yes.

3    THE COURT:  -- that whatever I decide to do with

4    respect to this preliminary injunction and whatever happens

5    with respect to the case, I haven't been in court before I

6    was a judge arguing the sorts of things you are arguing now,

7    but I have many times before I became a judge and took an

8    oath to be nonpartisanly political been in a position where I

9    was frustrated with a number of the things that you are

10   frustrated with.

11   Is there anything you want to add?

12   MR. PERKINS:  Yes, sir, your Honor.  Your Honor,

13   just it is just simply not frustration.  It is the fact that

14   -- you know, even in the Plotkin case that they -- they

15   misapplied Plotkin.  Plotkin was after George Ryan's

16   election.  See, that is a misapplication of Plotkin because

17   we have a certain urgency here.  And you have seen over and

18   over and over what is happening at that Election Board.  I

19   mean you have an opportunity now to protect the public

20   interest and do something about what is going on.  It is just

21   not my frustrations like an old woman may have.

22   THE COURT:  Well, let's -- we will strike that.

23   MR. PERKINS:  It is that -- it is that our -- it is

24   that our community is being robbed.  And Langdon Neal is a

25   part of that.  Hired Trucks, 100 million.  Duff.  100

1  million. Empowerment Zone, 100 million. Nobody is talking

2  about restoring to the inner cities these monies that have

3  been stolen through the corruption process at City Hall.

4  See, we are bleeding out there. And that is why I am here

5  making an emotional plea that you stop this because you see

6  what is going on.

7  THE COURT: Okay. Here is what I am going to do:

8  I will rule -- I will issue a ruling at 10:30. If you want

9  to come back, you are welcome to. If you want me to e-mail a

10  ruling to you, you are welcome to do that. I want to reflect

11  on what you have said, talk with Katie about what we talked

12  about last night so that you can get a ruling as -- as

13  expeditiously as possible.

14  If either side or both sides feel they need a --

15  would like to get a transcript of this, when I walk out of

16  the room, you could talk to Rosemary about how to get a

17  transcript.

18  My plan is to -- I have two more -- the two matters

19  this morning. I have a daughter who was brought into an

20  emergency labor situation last night, so I intend to go hold

21  her hand. Her husband is on another continent now. And

22  everyone else in the family is dropping over with fatigue.

23  So I will be out of the building. But my intention is before

24  I leave to sign the order. And I am hoping to leave at about

25  10:30.

1    So I am going to -- I am going to talk to Katie for

2    a few minutes now about some things that we talked about

3    writing up and -- and review of these particular documents.

4    I am not going to dismiss the lawsuit.  I am not

5    addressing that issue now.  So no matter what I do, we will

6    set a status time for the lawsuit and then determine whether

7    or not the plaintiff has -- you know, meets all the

8    requirements to carry on with the lawsuit and, if so, then

9    maybe the grievances that he has cited can be addressed at

10   that point in time.

11   But right now I am focused on the request that

12   Mr. Neal be ordered not to participate in the administration

13   of Tuesday's election, so I will -- you will get a ruling in

14   an hour.

15   Mr. Colman?

16   MR. COLMAN:  Could I just say three things very

17   briefly?

18   THE COURT:  Sure.

19   MR. COLMAN:  First I hope very much that your

20   daughter is going to be okay.  That is the most important.

21   THE COURT:  Well, I think she will.

22   Aren't you glad you are not a girl?

23   MR. COLMAN:  We won't go there.  I take the Fifth.

24   THE COURT:  Well, by that I meant at child birth

25   time.

1       MR. COLMAN:  Second, I just didn't want the record

2   to be silent.  I have known Langdon Neal for 25 years, first

3   meeting him and his dad as my opposing counsel when I was

4   representing Danny Davis, Dick Newhouse, Carol Moseley-Braun,

5   Jesse Jackson in the ward rerdistricting case of 1981.

6       THE COURT:  In which case?

7       MR. COLMAN:  The ward redistricting case of 1981.

8       Lang Neal is a wonderful, honorable man, and I want

9   that stated for the record.  His father was a hero to me.

10      Thirdly, your Honor, just administratively, I think

11  just in the automatic course of things there was a referral

12  for discovery purposes first to Judge Schenkier who recused

13  himself.  Now it is before Judge Valdez.  Could you, as part

14  of what you do today, stay that referral so that we don't

15  have to be in two different courtrooms?

16      THE COURT:  Well, yes.  Here is what we are going

17  to do, regardless of what I do on this preliminary

18  injunction:  Let's set a status for -- how about May 3rd?  By

19  then whatever happens in the election will be in and we could

20  determine what issues ought to be addressed at that point in

21  time.  So I am going to -- I am going to take -- I am sorry

22  to be as abrupt as I have, but, obviously, I was not aware of

23  the other things that were going to happen until 6:30 this

24  morning when I got a call from the hospital.  But,

25  fortunately, my reading on this case, other than what was

1    handed in this morning, was completed before I went to bed

2    last night.

3            And of the names he listed, I would say an unsung

4    hero of the whole field is Newhouse.

5            MR. PERKINS:  Richard Newhouse, he was one of the

6    first, your Honor.

7            THE COURT:  Exactly.  So I will be right back on

8    the Soo Line case.  All right.

9            MR. PERKINS:  Yes, sir.

10       (Which were all the proceedings heard.)

11                            CERTIFICATE

12       I certify that the foregoing is a correct transcript

13   from the record of proceedings in the above-entitled matter.

14

15   _Rosemary Scarpelli_                _4/18/07_

16   Rosemary Scarpelli            Date
     Official Court Reporter

17

18

19

20

21

22

23

24

25