Maurice Perkins, Pro Se'
4836 South Michigan Ave.
Chicago, Illinois 60653

**FILED**

MAY 0 4 2007

*MAY 4, 2007*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MAURICE PERKINS, and all other voters** ) <br> **it will effect,** ) <br>         **Plaintiff,** ) <br>     **vs.** ) <br> **LANGDON NEAL, in his individual &** ) <br> **official capacity as the City of Chicago** ) <br> **Chairman of the Board of Election** ) <br> **Commissioners,** ) <br>         **Defendant** ) | **Case No.: No. 07-CV-841** <br><br> **Honorable Wayne R. Andersen** <br><br> **Magistrate Judge Valdez** * |

### NOTICE OF MOTION

TO: See Attached Certificate of Service

     PLEASE TAKE NOTICE that you are being served by Maurice Perkins, Plaintiff has filed a **MOTION TO OPPOSE LANGDON NEAL'S MOTION FOR A PROTECTIVE ORDER TO STAY DISCOVERY AND TO STAY THE REFERRAL TO THE MAGISTRATE JUDGE PENDING RESOLUTION OF MOTION TO DISMISS & FOR A PRESERVATION ORDER,** a copy is hereby served upon you.

Respectfully submitted,

*Maurice Perkins*
Pro Se' Plaintiff

Dated: May 4, 2007

Maurice Perkins
4836 S. Michigan Ave.
Chicago, IL. 60653
(773) 548-1238

## CERTIFICATE OF SERVICE

Maurice Perkins, Pro Se', certifies that he caused copies of **MOTION TO OPPOSE LANGDON NEAL'S MOTION FOR A PROTECTIVE ORDER TO STAY DISCOVERY AND TO STAY THE REFERRAL TO THE MAGISTRATE JUDGE PENDING RESOLUTION OF MOTION TO DISMISS & FOR A PRESERVATION ORDER** TO BE SERVED UPON THE FOLLOWING PARTY BY CAUSING SAME TO BE DELIVERED BY MESSENGER ON May 4, 2007.

Jeffrey D. Colman
Melissa S. Wills
Jenner & Block LLP
330 N. Wabash Avenue
Chicago Illinois 60611

Maurice Perkins, Pro Se'

**F I L E D**

MAY 0 4 2007
*MAY 04, 2007*
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Maurice Perkins, Pro Se'
4836 South Michigan Ave.
Chicago, Illinois 60653

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MAURICE PERKINS, and all other voters ) it will effect, ) <br> Plaintiff, ) <br> vs. ) <br> LANGDON NEAL, in his individual & ) official capacity as the City of Chicago ) Chairman of the Board of Election ) Commissioners, ) <br> Defendant ) | Case No.: No. 07-CV-841 <br><br> Honorable Wayne R. Andersen* <br><br> Magistrate Judge Valdez |

## PLAINTIFF'S MOTION TO OPPOSE LANGDON NEALS'S MOTION FOR A PROTECTIVE ORDER TO STAY DISCOVERY AND TO STAY THE REFERRAL TO THE MAGISTRATE JUDGE PENDING RESOLUTION OF MOTION TO DISMISS & FOR A PRESERVATION ORDER

This case raises issues of crucial public importance to the exercise of democracy.

Plaintiff Perkins seek prospective injunctive relief from Defendants' continuing violation

of his constitutional right to vote. By this motion, the Plaintiff Perkins asks the Court to

order Defendants to preserve evidence from the 2007 mayoral election – namely voting

machines, their contents, manuals, and other election-related information. The court in

Jordan v. City of Greenwood, Miss., 599 F.Supp. 397, 401 (N.D. Miss. 1984), made a

similar holding. After examining Black socio-economic disadvantages in education,

income, poverty status, employment, living conditions, and health under the totality

review, the court held these disadvantages contributed to decrease Black political

participation and effectiveness in the community. Id. As the court stated in *International*

*Brotherhood of Electrical Workers v. St. Louis County*, 117 F. Supp. 2d 922, 933 (E.D.

Mo. 2000), "[m]aking contributions to a party or candidate or attending picnics, rallies, dinners or other social functions for a party or candidate are nothing more than actively participating in fundraising activities for, or soliciting votes for a partisan candidate or political party [.]" The requested preservation order is much needed in the public interest right to preserve evidence. If this evidence is not in fact preserved, Mr. Perkins and voters will be forever denied access to critical evidence to prove that Defendants' maladministration of elections, with respect to ballots and electronic voting machines, violates their constitutional right to vote.

Mr. Perkins also asks the Court to deny and lift any protective order to stay discovery requested on April 27, 2007, generally, and in particular, to permit discovery regarding voting machines before Defendants reuse the machines in the 2008 federal elections, the Illinois primary for President which is scheduled for May 2008. "The rule obtains in elections, as in other affairs, that a man shall not profit by his own wrong, nor by that of others done to allow him to reap the benefit. The only means by which approximate justice may be reached when the illegal acts render the result doubtful is to require the party to whose benefit they inure to purge the poll of their effect, or to suffer the penalty of having its majority excluded from his count of votes. (Citation). When the ballot box becomes the receptacle of fraudulent votes, the freedom and equality of elections are destroyed." *Lehman v. Hill*, 414 Ill. 173, 178, 111 N.E.2d 120 (1953).

# I. RULE 26 PROVIDES FOR BROAD DISCOVERY

The Court has interpreted the coverage of the VRA to be as broad as possible, in part by

defining "voting" to include "all action necessary to make a vote effective," Allen v.

State Board of Elections, 393 U.S. 544, 565-566 (1969), as a means "to banish the blight

of racial discrimination in voting, which has infected the electoral process in parts

of our country for nearly a century." South Carolina v. Katzenbach, 383 U.S. 301,

308 (1966).

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not

privileged, which is relevant to the subject matter involved in the pending action." As a

general matter, "relevance" for discovery purposes is broadly construed, and "information

sought need not be admissible at the trial if the information sought appears reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); see,

e.g., *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The scope

of examination permitted under Rule 26 (b) is broader than that permitted at trial.")

(internal quotation marks omitted). Courts have long held that pretrial discovery is "to be

accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)

("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party

from inquiring into the facts underlying his opponent's case.").

*Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("It

is a premise of modern litigation that the Federal Rules contemplate liberal discovery, in

the interest of just and complete resolution of disputes."); *Epstein v. MCA, Inc.*, 54 F.3d

1422, 1423 (9th Cir. 1995) ("The Federal Rules of Civil Procedure creates a 'broad right

of discovery' because 'wide access to relevant facts serves the integrity and fairness of

the judicial process by promoting the search for the truth.'"). Of course, district courts have considerable discretion in handling discovery matters. *See, e.g., Brune v. IRS*, 861 F.2d 1284, 1288 (D.C. Cir. 1988); *Laborers' Int'l Union of N. Am. v. Department of Justice*, 772 F.2d 919, 921 (D.C. Cir. 1984) ("Control of discovery is a matter entrusted to the sound discretion of the trial courts.").] In the Fifth Circuit, the court in *McMillan v. Escambia County, Fla.*, 748 F.2d 1037, 1044 (5th Cir. 1984) announced "discrimination against minorities outside of the electoral system cannot be ignored in assessing that system."

The Rule 26(b) standard is even more relaxed in the antitrust context. See 6 James Wm. Moore, MOORE'S FEDERAL PRACTICE, s. 26.46[1], at 26-116 (3d ed. 1998) ("The scope of discovery in antitrust actions is at least as broad, if not broader than, the scope of discovery in other actions because of the public importance of the decision, and the need to define the issues."); *United States v. AT&T Co.*, 461 F. Supp. 1314, 1341 (D.D.C. 1978) ("If the purposes of the Rules, and of pretrial discovery generally are to be effectuated, actual discovery must be expected to be somewhat of a 'fishing expedition,' particularly in antitrust and similarly complex litigation."); *FTC v. Lukens Steel Co.*, 444 F. Supp. 803, 805 ( D.D.C. 1977) ("The discovery rules should normally be liberally construed to permit discovery in antitrust cases."); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 217 (D. Del. 1985) ("[T]here is a general policy of allowing liberal discovery in antitrust cases."); *Kinzler v. New York Stock Exch.*, 1973 WL 772, at *2 (S.D.N.Y. 1973) ("Particularly in antitrust cases, where matters which at first blush may not seem pertinent to the specific issue later shed light on intent, broad discovery is favored.").

By way of background, Mr. Perkins observes that subsequent to the Court's case

Discovery status hearing before Honorable Judge Valdez on May 31, 2007, a significant

amount of discovery will may take place involving initial disclosures, written

interrogatories, document production requests, third party subpoenas, document

production and depositions, all in anticipation of a October 2007 trial date. For the

reasons set forth herein, and upon consideration of the entire case, the Court should enter

a preservation order and resume discovery in this case.


## II. A PRESERVATION ORDER SHOULD BE ISSUED.

The Federal Rules of Civil Procedure contemplate that evidence will be preserved

and available for trial. Fed. R. Civ. P. 26; _Danis v. USN Communications_, Inc., 53

Fed.R.Serv.3d 828 (N.D. Ill. 2000) (federal discovery rules imply a duty "to preserve

documents and other information that may be relevant in a case.") In considering an order

to preserve evidence, "[t]he reviewing court, as well as the parties, should be focused

upon maintaining the integrity of the evidence in a form as close to, if not identical to, the

original condition of the evidence." _Capricorn Power Co., Inc. v. Siemens Westinghouse_

_Power Corp._, 220 F.R.D. 429, 435 (2004). The standard for a preservation order is easily

met here inasmuch as Mr. Perkins faces the destruction of evidence and irreparable harm

if evidence is destroyed or otherwise tampered with before discovery. Furthermore, there

is no demonstrable burden to a party.


## III. DISCOVERY SHOULD GO FORWARD PENDING CONSIDERATION OF DEFENDANTS' PENDING RESOLUTION OF MOTION TO DISMISS DEFENSE

District courts have discretion and power to permit, limit or stay discovery while

motions to dismiss are pending. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir.1999).

Specifically with regard to discovery, a defendant who fails to timely assert

the defense prior to discovery may waive the right to avoid discovery," Id.

Moreover, Mr. Perkins has a distinct and compelling additional reason that

discovery should be allowed now – to avoid causing his irreparable injury. "[t]here are

powerful policy reasons why discovery should not be halted. Regardless of what happens

to the damage claims in this case, the equitable requests stand on a different footing."

*Cancel-Lugo v. Alvarado*, 114 F.3d 1169; *Debasing v. Arnold*, 742 F.2d 401, 404 (8th Cir.

1984). "Even if we overlook considerations of efficient calendar management by the trial

court, considerations which obviously are not to be slighted, this discovery should be

carried out sooner rather than later, particularly where, as here, there are claims of

irreparable injury." Id. Mr. Perkins is at substantial risk of irreparable injury in at least

two ways. First and foremost, he has a constitutional right to vote, which he alleges

Defendants are infringing, and each election that goes by means another election in which

his voting rights will likely be violated irreparably.

Thus, it is imperative that discovery not be stayed or protected. To make his case that

Defendants are continuing to violate his right to vote by their maladministration of

voting, Mr. Perkins in particular requires access to the voting machines used in the 2007

mayoral and aldermanic election before they are recalibrated and reused in future

elections. As previously observed, the next federal election is only months away. A

substantial risk exists that the recalibration and reuse of the voting machines will result in

evidence that would be helpful to Mr. Perkin's case being lost.

Mr. Perkins needs access to the electronic voting machines used in Cook

County and elsewhere in Illinois in 2007 in a condition that is as close to the condition they were in on the Election Day as possible. In particular, Mr. Perkins needs to determine why the "jumping screen" he experienced occurred and whether it was from poor screen calibration in the monitors, errors in the ballot mapping done prior to the election, bugs in the computer program or possible malicious activity.

**At least following items will be needed for a review:**

**a.** Any voting ballots, machines or tally machines used by Mr. Perkins and others who reported the "jumping screen" problem in 2007. The purpose is to perform a number of tests, including: (1) a screen calibration test, and (2) a review of redundant memory, log files and registers inside voting machines to ensure that each memory bank is consistent with each other and with the totals reflected on the cartridges removed from the machine at the end of the election and that the log files and registers do not reflect any malicious or unexpected changes to the direct recording electronic (DRE) machines.

**b.** A complete voting machine set up as it was on election day, 2007, including hard drive, monitor, memory cards and smart cards used to activate the machines for voting and to store votes, as well as a complete vote tally system set up, to track the votes from the voter to the final tally report.

**c.** Source code for the system and tally system so that its operation can be viewed and understood from "inside the machine" to watch for programming errors and malfunctions as well as signs of hacking or other manipulation.

**d.** Review of internal audit logs and machine registers, including both electronic

voting machines and tally systems, from the date on which the ballot was finalized and sent to the publisher for the creation of absentee ballots in 2007 (usually 45 days prior to the election) to the date the election was certified. Especially important is review of network access logs.

e. The public counters and protective counters and the "end of the day" paper print out from each electronic voting machine in each precinct at the close of the polls, as well as the audit logs from each precinct.

In addition to access to the machines themselves, Mr. Perkins' claims raise serious questions about the Commissioner and the processes used to support the use of electronic voting machines in Illinois. He alleges that election workers are not given sufficient training on the use of the electronic voting machines, including processes and procedures for dealing with the machines that malfunction. He requires access to all of the procedures that applied in 2007, the training materials used by election officials, any reports from voters about problems in 2006 and 2007 elections, much of which could be destroyed or lost should discovery not resume now.

In sum, the next few months provide an important window in which to conduct the discovery into Illinois's voting machines before they are reset and deployed for the 2008 election.

Delaying voting machine discovery will seriously jeopardize Mr. Perkins ability to prove his case. It will also ensure that Illinois voters obtain no relief prior to the May 2008 general election, and will likely delay relief until 2009 or beyond.

## IV. DISCOVERY SHOULD GO FORTH EVEN IN THE EVENT THE DEFENDANTS' MOTION TO DISMISS IS GRANTED

Not surprisingly, the Defendants do not identify which "attendant legal theories" have not been tested. Clearly, a citizen's right to vote is protected by all rights cited also including both the Equal Protection and Due Process Clauses of the United States Constitution. Neither issue is untested in the Seventh Circuit nor presents a case of first impression. The District Court, in denying the Defendants' motion to dismiss, cited to a myriad of case law supporting the claims raised by the Plaintiffs.

Mr. Perkins submits that the Court will likewise reject Defendants' belated defenses as wholly without merit. There is consequently no likelihood of Defendants prevailing.

**2. Defendants Will Suffer No Harm if Discovery Proceeds.**

If delayed, the discovery process could create disruption of the work of the Boards of Election in the critical weeks prior to a major election. Obviously such an outcome could and should be avoided by allowing discovery now.

**3. A Discovery Stay Will Cause Great Prejudice to Plaintiffs.**

As previously set forth, the upcoming elections make it imperative that the Plaintiff in particular, Mr. Perkins be permitted to proceed with discovery.

**4. Public Interest Weighs in Favor of Continuing Discovery.**

The American public has a great interest in having its votes properly counted. Delay in initiating discovery until after the Pending motion to be dismissed is addressed will ensure that the ultimate relief in this case is delayed past the election into 2008, and possibly even beyond the 2008 Presidential major election. Every election that passes without proper procedural protection for voters compounds the harm suffered by Mr. Perkins, plaintiffs and all eligible voters in Illinois, due to poorly functioning

technologies and inadequate supporting processes. The majority of Chicago voters are scheduled to vote on electronic voting machines in 2008 under the leadership of Defendant once again. The Impact of Local Election Systems on Black Political Representation, 11 Urb. Aff. Q. 345 (1976); United States Commission on Civil Rights, The Voting Rights Act: Unfulfilled Goals 38-41 (1981). *Thornburg v. Gingles*, 478 U.S. 30,57 (1986). Providing voters with constitutional voting processes without a conflict in time for the next election is critical and that can only be accomplished if discovery goes ahead.

## V. CONCLUSION

Because loss of political power through vote dilution is distinct from the mere inability to win a particular election, *Whitecomb v. Davis*, 403 U.S. 124,153 (1971). Plaintiff believes that Defendant's conflict-of-interest pending supporting candidates in the elections in which he has oversight denies all voters and the community a fair process.

For the reasons stated, Mr. Perkins respectfully requests that the stay requested to be placed upon discovery be denied, lifted and a preservation order entered.

Respectfully submitted,

Maurice Perkins

_____

**Maurice Perkins, Pro Se'**

**Dated: May 4, 2007**