IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE PERKINS, and all other voters it will effect, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07 C 841 Wayne R. Andersen |
| LANGDON NEAL, in his individual and official capacity as the City of Chicago Chairman of the Board of Election Commissioners, | ) ) ) ) ) ) | District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant Langdon Neal's motion to dismiss all counts of plaintiff Maurice Perkins's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, we grant the motion.

## BACKGROUND

Perkins, a Chicago resident and knowledgeable political activist, brought this action against Neal, the chairman of the Board of Election Commissioners for the City of Chicago, on February 13, 2007, shortly before an election was to take place. Perkins alleges that Neal has a conflict of interest in serving as the election board chairman while also managing a law firm that has received substantial legal fees from the City of Chicago, and Perkins seeks to enjoin Neal from serving as chairman. Perkins alleges that Neal has deprived and threatens to deprive Perkins of his right to vote under the First and Fourteenth Amendments and the Voting Rights Act. Perkins says that Neal's conflict of interest hampers Neal's ability to objectively resolve problems that might arise during the voting process and burdens Perkins's voting rights and all voters' rights.

Count I of the complaint alleges that Neal has deprived Perkins of his First Amendment rights to free choice, association, expression, and protest, by impairing Perkins's freedom of choice in the voting process. Count II alleges that Neal has deprived Perkins of his equal protection rights under the Fourteenth Amendment because Neal's financial interests as a lawyer doing work for the city impair Neal's objectivity as chairman of the election board and create a "tangible burden to plaintiff in the voting process." Count III alleges that Neal has deprived Perkins of his right to vote freely pursuant to the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq. Count IV alleges that Neal has deprived Perkins of the "intangible right of honest services," as defined by the Mail Fraud Act, 18 U.S.C. § 1346. Perkins seeks a declaratory judgment and injunctive relief.

Neal filed a motion to dismiss all counts under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

## LEGAL STANDARD

Neal argues that Perkins lacks standing under Article III of the U.S. Constitution to bring this suit and, therefore, that the complaint must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This is a threshold matter for the court because "plaintiffs, as the parties invoking federal jurisdiction, have the burden of proof and persuasion as to the existence of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy the Article III standing requirements, a plaintiff must show three things: (1) that he has suffered "injury in fact" that is a) concrete and particularized and b) actual or imminent, as opposed to conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61); *Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001). On a motion to dismiss, general factual allegations of injury

resulting from the defendant's conduct will suffice because the court presumes "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal citation omitted). However, each element of standing must be supported by more than "unadorned speculation." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 852 (7th Cir. 2005) (citing *Plotkin*, 239 F.3d at 885).

In addition to the Article III requirements, "the standing doctrine embraces several judicially imposed limits on the exercise of federal jurisdiction, such as . . . the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches . . . ." *O'Sullivan*, 396 F.3d at 854 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The Seventh Circuit has held that "from a prudential standpoint, courts must pay particularly close attention to these [standing] requirements when they are asked to restrain the action of a public entity," and that "voters, taxpayers or residents voicing generalized complaints are not sufficient to justify the federal courts' intrusion into the workings of the States." *Id.* at 857.

## DISCUSSION

### I.   *Injury in fact*

In his complaint, Perkins alleges a variety of injuries resulting from Neal's conflict of interest, but he falls short of alleging that any of the injuries are concrete and particularized to himself or that any of the injuries are actual or imminent. *See Lujan*, 504 U.S. at 560. For instance, Perkins alleges that Neal's actions constitute "a pattern, practice, and unspoken policy" of impairing Perkins's rights under the First and Fourteenth Amendments and that Neal's dual roles as chairman of the election commissioners and owner of a law firm do not "serve the public interest" and are in "substantial conflict" with the proper discharge of the duties of an election commissioner. Perkins alleges that Neal's actions have resulted in the following injuries:

3

depriving and threatening to deprive Perkins of his constitutionally protected liberty and property interests without due process of law; imperiling Perkins's and others voters' rights by increasing the chance of "voting fraud [and] theft of votes"; and an overall undermining of the democratic system.

Such generalized grievances about the operation of government are not sufficient "injury in fact" to satisfy Article III standing requirements. *See O'Sullivan*, 396 F.3d at 854. In this case, Perkins is similar to the plaintiffs in *O'Sullivan*, in which the Seventh Circuit concluded that generalized complaints by registered voters were not sufficient to justify the injury in fact requirement. 396 F.3d at 857. In *O'Sullivan*, the court held:

> [A] plaintiff raising only a generally available grievance about government– claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.

396 F.3d at 855 (internal citation omitted). Perkins's alleged injuries are also similar to those alleged by the plaintiff in *Plotkin*, who argued that he had suffered injury in the form of an increased risk of vehicle accidents because unqualified drivers had illegally obtained commercial drivers' licenses in Illinois when George Ryan was Secretary of State. 239 F.3d at 886. The court held that "this risk is too speculative and generalized to constitute an injury-in-fact for standing purposes," reasoning that "[if the plaintiff] allegedly suffers injury from an increased risk of accident, then so do all people using Illinois highways . . . ." *Id.*

In his complaint, Perkins never asserts that he has suffered "a direct and palpable injury, different from any injuries suffered by a member of the general public," which is required to establish injury in fact. *See O'Sullivan*, 396 F.3d at 867. Therefore, Perkins does not have standing to bring this suit.

## II. Traceability

Perkins also cites several instances of financial harm that he alleges have been caused by Neal's conflict of interest. For example, Perkins asserts that "because of these continual governmental conflict[s]-of-interest," a) Perkins's property taxes in a predominantly African-American community have increased from $8,000 to $38,000; b) the African-American community has been gentrified, federal Empowerment Zone funding has been misappropriated, tax increment financing money has been squandered, and census dollars have been improperly diverted from African-American neighborhoods; and c) Mayor Daley has been allowed to "predatorily rape and molest the African-American Community of its resources." None of these alleged injuries is reasonably traceable to the challenged actions of Neal, as required by the second prong of the *Lujan* test. *See Lujan*, 504 U.S. at 560 (holding that the injury must be fairly traceable to the challenged action of the defendant and not be the result of the independent action of some third party not before the court).

Perkins also included excerpts from an April 27, 2006, Cook County Board of Commissioners committee meeting, citing a multitude of problems that occurred at polling places during the March 21, 2006, election, including human error, voting materials not being delivered on time, technical problems, jammed machines, insufficiently trained judges, a lack of response from technical support staff, and other mechanical and software problems. Perkins alleges that Neal never investigated any of the issues raised during the meeting and asserts that it is "self-evident" that the harm caused to him and other African-American voters as a result of these polling-place problems is traceable to Neal. Perkins has not shown that these alleged injuries are fairly traceable to the challenged actions of the defendant in this case. In addition, the injuries alleged by Perkins are general criticisms that are not particularized enough to show

that any harm was caused to him or anyone else. Therefore, Perkins lacks standing to bring this suit. *See Lujan*, 504 U.S. at 560.

If Perkins has evidence of malfeasance by the City of Chicago Board of Election Commissioners, he should submit that information to Chief Judge Timothy Evans of the Circuit Court of Cook County who oversees the appointment of the commissioners.

### III. *Redressability*

Because Perkins has not met the first two elements necessary to establish Article III standing, we need not examine the third element, which requires a determination of whether it is likely, as opposed to merely speculative, that any alleged injury would be redressed by a favorable decision. *See Lujan*, 504 U.S. at 561.

Finding that plaintiff lacks standing, we need not address the Rule 12(b)(6) issues.

## CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss [17] is granted. This case is hereby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Dated: October 19, 2007